# Exhibit K

**KREF CAPITAL LLC**
**30 Hudson Yards, Suite 7500**
**New York, New York 10001**

April 12, 2026

LAK Bourse Owner, LLC
LAK Bourse Master HTC Landlord, LLC
c/o Keystone Property Group, L.P.
1001 Conshohocken State Road, Suite 2-201
West Conshohocken, PA 19428
Attention:  General Counsel
Attention: Rich Gottlieb and Jamie Reyle
Email: rich@keystone.us and jreyle@keystone.us

**BY OVERNIGHT COURIER AND EMAIL**

With copies to each of the parties set forth on Schedule 1 attached hereto.

Re:     That certain mortgage loan (the "***Loan***") made pursuant to that certain Loan Agreement, dated as of June 28, 2024, among KREF Lending III LLC, a Delaware limited liability company, as original lender ("***Original Lender***"), and LAK Bourse Owner, LLC, a Delaware limited liability company ("***Bourse Fee Borrower***"), LAK Bourse Master HTC Landlord, LLC, a Delaware limited liability company ("***Bourse Leasehold Borrower***", and together with Bourse Fee Borrower, collectively, "***Borrower***"), LAK 400 Owner, LLC, a Delaware limited liability company ("***400 Market Fee Borrower***"), and LAK Market Master HTC Landlord, LLC, a Delaware limited liability company ("***400 Market Leasehold Borrower***") (as same may be amended, restated, supplemented or otherwise modified from time to time, the "***Loan Agreement***"). The Original Lender's interest under the Loan and the Loan Documents was assigned to KREF Capital LLC, a Delaware limited liability company ("***Lender***"), pursuant to that certain Assignment and Assumption of Interest Under Open-End Fee and Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of December 18, 2025, and recorded on December 24, 2025 in the land records of Philadelphia County, Commonwealth of Pennsylvania as Document ID: 54503787. The Loan is secured by, among other things, that certain Open-End Fee and Leasehold Mortgage, Assignment of Leases and

Classification: Limited

6000061883.4

Rents, Security Agreement and Fixture Filing, dated as of June 28, 2024, by Borrower in favor of Original Lender, and recorded on July 9, 2024 in the land records of Philadelphia County, Commonwealth of Pennsylvania as Document ID: 54317813, encumbering certain real property commonly known as "The Bourse" located at 111 S. Independence Mall East, Philadelphia, Pennsylvania (the "*Property*"). 400 Market Fee Borrower and 400 Market Leasehold Borrower were released as borrowers under the Loan pursuant to that certain Release (400 Market), dated as of March 5, 2025, by Original Lender.

Ladies and Gentlemen:

Reference is hereby made to the Loan Agreement and the other Loan Documents (as defined in the Loan Agreement). Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to such terms in the Loan Agreement.

Lender has become aware of certain matters that may constitute Defaults and/or Events of Default under the Loan Agreement and the other Loan Documents. Lender hereby notifies Borrower of the following matters (collectively, the "*Specific Matters*"):

1.       **Hotel Conversion Milestone Non-Compliance**. Pursuant to Section 10.1(a)(xxiv) of the Loan Agreement, the occurrence of Milestone Non-Compliance constitutes an Event of Default. The Loan Agreement defines "Hotel Conversion Major Milestones" to include, among other things: (i) receipt of a demolition permit by November 30, 2024 (subject to extension by up to 60 days); (ii) receipt of a building permit by March 30, 2025 (subject to extension by up to 60 days); (iii) receipt of a temporary certificate of occupancy by April 30, 2026 (subject to extension by up to 60 days); and (iv) Hotel Conversion Substantial Completion by May 31, 2026 (subject to extension by up to 60 days). Additionally, pursuant to Section 10.1(a)(xxvii) of the Loan Agreement, if following Hotel Conversion Commencement, there is any cessation at any time in construction of the Hotel Conversion for more than fifteen (15) consecutive Business Days after notice thereof and a failure to resume construction after such period (other than as a result of Force Majeure), the same constitutes an Event of Default. Additionally, Entity Guarantor has covenanted to achieve such milestones under the Guaranty of Completion. Lender is informed that the hotel conversion construction work at the Property has ceased and that the hotel conversion portion of the project may no longer be moving forward as originally planned (see the article attached hereto as Schedule 2). Lender hereby reserves all of its rights under the Loan Documents with respect to Borrower's and Entity Guarantor's apparent failure and/or expected failure to satisfy the Hotel Conversion Major Milestones and with respect to any cessation of construction work.

2

Classification: Limited

2.      **Failure to Pay Trade Payables**. Pursuant to Section 4.2.6(f) of the Loan Agreement, Borrower may incur unsecured trade payables incurred in the ordinary course of business relating to the ownership and operation of the Property, provided that such trade payables, amongst other things, are paid within ninety (90) days of the date invoiced. It has come to Lender's attention that significant accounts payable relating to the Property are accruing and not being paid current as required by Section 4.2.6(f)(iii) of the Loan Agreement. Lender hereby reserves all of its rights under the Loan Documents with respect to Borrower's failure to pay trade payables within the timeline required by the Loan Agreement.

3.      **Mechanic's Liens**. Pursuant to Section 10.1(a)(viii) of the Loan Agreement, subject to Borrower's right to contest as set forth in the Loan Agreement, if the Property becomes subject to any mechanic's, materialman's or other Lien (other than a Lien for local real estate taxes and assessments not then due and payable), the same constitutes an Event of Default. Pursuant to Section 4.2.2 of the Loan Agreement, Borrower shall not create, incur, assume or suffer to exist any Lien on any portion of the Property or the Collateral, except for Permitted Encumbrances and Permitted Transfers. Additionally, Entity Guarantor has covenanted to keep the Property lien free under the Guaranty of Completion. Lender is informed that the following mechanic's liens have been filed against the Property: (a) Tantillo Architecture in the amount of $484,508.77; (b) PD Construction Group in the amount of $324,493.60; (c) K Guller LLC in the amount of $93,397.50; and (d) Old City Special Services District in the amount of $26,029.06. Lender hereby reserves all of its rights under the Loan Documents with respect to Borrower's and Entity Guarantor's failure to discharge such liens.

Each Borrower Party is hereby advised that Lender's delay, if any, in giving any notice of Default or Event of Default or exercising any rights and/or remedies under the Loan Agreement and/or any of the Loan Documents in respect of the Specific Matters and/or taking any other action under the Loan Agreement and/or any of the Loan Documents or otherwise, including, without limitation, the disbursement of any Reserve Funds, and/or the failure to charge interest at the Default Rate and/or demand deposit of any shortfalls into any applicable Account or any other deficiency or other sum required to be deposited pursuant to the Loan Agreement and/or the other Loan Documents, in each case, whether prior to, on or after the date hereof, shall not in any event or at any time constitute (i) a waiver or modification or other amendment of the terms of the Loan Documents or any Borrower Party's payment, performance or any other obligations set forth therein, (ii) any agreement by Lender to disburse any Reserve Funds or apply funds pursuant to Section 6.16 of the Loan Agreement if all conditions to the same set forth in the Loan Documents are not satisfied, (iii) a cure or waiver of any existing Defaults or Events of Default under the Loan Documents or a forbearance from Lender's exercise of

3

Classification: Limited

any rights or remedies pursuant to the same (including, without limitation, the right to charge interest at the Default Rate from the date of the occurrence of any applicable Default or Event of Default notwithstanding the fact that the same has not been demanded or collected on any date subsequent to the occurrence of such Default or Event of Default), (iv) a waiver of any rights or remedies that Lender may have under the Loan Documents, at law or in equity, (v) a modification of the Loan Documents or any agreement by Lender to make any modifications to the Loan Documents, (vi) a course of conduct or course of dealing obligating Lender to act in a similar fashion in the future or otherwise suggesting any future behavior by Lender, (vii) a waiver of Lender's right to obligate any Borrower Party to comply with the Loan Documents expressly in accordance with the Loan Documents and/or to exercise any rights under the Loan Documents as a result of any Borrower Party's failure to act as required by the Loan Agreement, (viii) a waiver of Borrower's obligations or Lender's rights with respect to any approval of any budget, (ix) an approval by Lender of any budget (or any amendments to any of the foregoing) submitted by or on behalf of Borrower, or (x) a rescission or modification of any notices given to any Borrower Party or any other obligor, and Lender expressly reserves the right to pursue all such rights and remedies with respect to any existing Defaults or Events of Default under the Loan Documents and any other existing delinquencies, breaches, Defaults or Events of Default, including, without limitation, the Specific Matters, and with respect to any future delinquencies, breaches, Default, or Events of Default, as provided in the Loan Documents and applicable law.

This notice may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same instrument. The words "execution," signed," "signature," and words of like import in this notice or in any other certificate, agreement or document related to this notice shall include images of manually executed signatures transmitted by facsimile or other electronic format (including, without limitation, "pdf", "tif" or "jpg") and other electronic signatures (including, without limitation, DocuSign and AdobeSign). The use of electronic signatures and electronic records (including, without limitation, any contract or other record created, generated, sent, communicated, received, or stored by electronic means) shall be of the same legal effect, validity and enforceability as a manually executed signature or use of a paper-based record-keeping system to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act and any other applicable law, including, without limitation, any state law based on the Uniform Electronic Transactions Act or the Uniform Commercial Code.

This notice shall be governed by and construed in accordance with the laws of the State of New York.

4

Classification: Limited

5

[*Remainder of page intentionally left blank.  Signature page follows.*]

Classification: Limited

Sincerely,

**KREF CAPITAL LLC**, a Delaware
limited liability company

By: _____

Name: John Gors

Title:  Authorized Signatory

[*End signatures.*]

[Signature to Reservation of Rights]

Classification: Limited

<u>Schedule 1</u>

Lubert-Adler, L.P.
2400 Market Street, Suite 301
Philadelphia, Pennsylvania 19203
Attention: Dean Adler and Jessica Morgan
Email: dadler@lubertadler.com and
jmorgan@lubertadler.com

Dean Adler
DSA Guarantor, LLC
2400 Market Street, Suite 301
Philadelphia, Pennsylvania 19203
Email: dadler@lubertadler.com

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, 14th Floor
Philadelphia, Pennsylvania 19103
Attention: Bradley A. Krouse, Esq.
Email: bkrouse@klehr.com

Schedule 2 – News Article
(see attached)

5003869986.2

Classification: Limited

**FOR THE EXCLUSIVE USE OF** ARAMIREZ@GIBSONDUNN.COM

From the Philadelphia Business Journal:
https://www.bizjournals.com/philadelphia/news/2026/03/02/bourse-hotel-apartments-adler-keystone-pmc.html

SUBSCRIBER CONTENT:

## CRANE WATCH

**Commercial Real Estate**

# Bourse hotel plans in Old City no longer moving forward, sources say



The Bourse building, at 111 S Independence Mall E., was built in 1895.
PAUL SCHWEDELSON / PHILADELPHIA BUSINESS JOURNAL

 By Paul Schwedelson – Reporter, Philadelphia Business Journal
Mar 2, 2026

> Listen to this article    4 min

Redevelopment plans for the historic Bourse building in Old City have changed, with the hotel portion of the project being replaced by apartments, industry sources told the Business Journal.

Revised plans would convert a section of the 302,000-square-foot building into 85 apartments instead of the 152-room hotel previously planned for the space.

The shift in uses could also mean a change in developers for the project, ending the partnership between real estate investor Dean Adler and West Conshohocken-based firm Keystone, according to sources familiar with the plans. PMC Property Group, the city's largest apartment owner, would potentially step in to take over the residential portion of the Bourse redevelopment, the sources said.

A change in development partners would not affect Adler's role in the project. Adler, who previously led Lubert-Adler Real Estate Funds with partner Ira Lubert, now operates through Adler and Co.

Adler and Philadelphia-based PMC are already partnering on a planned acquisition and redevelopment of the 1.76 million-square-foot, two-tower Centre Square property next to City Hall.

Adler and PMC declined to comment on the new plans for the Bourse. Keystone did not respond to requests for comment.

Signage on the Bourse building continues to identify it as a Keystone property.



The ground floor of the Bourse building photographed in February 2025. The space remains virtually unchanged since.

PAUL SCHWEDELSON / PHILADELPHIA BUSINESS JOURNAL

Lubert-Adler and Keystone paid $31 million in 2024 for the Bourse building and $10 million for the adjacent office building at 400 Market St. Keystone and Adler

are in the final stages of work to convert 400 Market from 173,700 square feet of office space into 176 apartments. Pre-leasing for the apartments is underway.

The 131-year-old Bourse is at 111 S. Independence Mall East, just south of 400 Market St. and east of the Liberty Bell and Independence Hall.

In 2018, the Bourse Food Hall opened after a $22.5 million overhaul of the building's first-floor retail space. The food hall closed during the pandemic and never fully recovered, eventually closing permanently once the hotel plans were in place.

Development plans for the historic building have called for the hotel to take the third, fourth and eighth floors. Office space totaling 175,000 square feet remains on the fifth, sixth, seventh, ninth and 10th floors, a configuration based on working around existing office tenants. Among the Bourse tenants is health care advertising agency Digitas Inc., which moved into about 55,000 square feet of office space in 2023.

Dubbed the Bourse Hotel, it secured a spot under Hilton's Tapestry Collection flag. Keystone has a prior relationship with the flag after developing the Hotel West & Main in Conshohocken, which is a Hilton Tapestry Collection property.

The hotel portion of the Bourse project was originally scheduled to be completed by the first quarter of this year, in time to capture demand from hundreds of thousands of tourists expected to visit Philadelphia for the nation's 250th anniversary, the FIFA World Cup and other events this summer.



A model suite for the Hilton Tapestry Collection hotel that was built inside the historic Bourse building in Old City and photographed in June 2025.

MARIA YOUNG PHOTOGRAPHY | FOR PHILADELPHIA BUSINESS JOURNAL

Though a model hotel room had been completed by last June, little progress has been made on the conversion project since.

Four contractors have filed mechanics liens since October in the Philadelphia Court of Common Pleas against LAK Bourse Owner LLC, the entity that owns the Bourse building, alleging they had not been paid for their work on the project.

---

*Sign up here for the Philadelphia Business Journal's free newsletters, and download our free app for breaking news alerts.*