# Exhibit L

**KREF CAPITAL LLC**
**30 Hudson Yards, Suite 7500**
**New York, New York 10001**

May 7, 2026

LAK Bourse Owner, LLC
LAK Bourse Master HTC Landlord, LLC
c/o Keystone Property Group, L.P.
1001 Conshohocken State Road, Suite 2-201
West Conshohocken, PA 19428
Attention: General Counsel
Attention: Rich Gottlieb and Jamie Reyle
Email: rich@keystone.us and jreyle@keystone.us

**BY OVERNIGHT COURIER AND EMAIL**

With copies to each of the parties set forth on Schedule 1 attached hereto.

Re:    **Notice of Event of Default, Imposition of Default Rate Interest, Notice of Recourse Events and Reservation of Rights** in connection with that certain mortgage loan (the "***Loan***") made pursuant to that certain Loan Agreement, dated as of June 28, 2024, among KREF Lending III LLC, a Delaware limited liability company, as original lender ("***Original Lender***"), and LAK Bourse Owner, LLC, a Delaware limited liability company ("***Bourse Fee Borrower***"), LAK Bourse Master HTC Landlord, LLC, a Delaware limited liability company ("***Bourse Leasehold Borrower***", and together with Bourse Fee Borrower, collectively, "***Borrower***"), LAK 400 Owner, LLC, a Delaware limited liability company ("***400 Market Fee Borrower***"), and LAK Market Master HTC Landlord, LLC, a Delaware limited liability company ("***400 Market Leasehold Borrower***") (as same may be amended, restated, supplemented or otherwise modified from time to time, the "***Loan Agreement***"). The Original Lender's interest under the Loan and the Loan Documents was assigned to KREF Capital LLC, a Delaware limited liability company ("***Lender***"), pursuant to that certain Assignment and Assumption of Interest Under Open-End Fee and Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of December 18, 2025, and recorded on December 24, 2025 in the land records of Philadelphia County, Commonwealth of Pennsylvania as

6000575670.4

Document ID: 54503787. The Loan is secured by, among other things, that certain Open-End Fee and Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of June 28, 2024, by Borrower in favor of Original Lender, and recorded on July 9, 2024 in the land records of Philadelphia County, Commonwealth of Pennsylvania as Document ID: 54317813, encumbering certain real property commonly known as "The Bourse" located at 111 S. Independence Mall East, Philadelphia, Pennsylvania (the "***Property***"). 400 Market Fee Borrower and 400 Market Leasehold Borrower were released as borrowers under the Loan pursuant to that certain Release (400 Market), dated as of March 5, 2025, by Original Lender.

Ladies and Gentlemen:

Reference is hereby made to (i) the Loan Agreement and the other Loan Documents (as defined in the Loan Agreement), (ii) that certain letter from Lender to Borrower, dated April 12, 2026 (the "***Reservation of Rights Letter***"), in which Lender notified Borrower of certain "Specific Matters" (as defined therein) under the Loan Agreement and the other Loan Documents and reserved all of its rights and remedies in respect thereof, (iii) that certain Guaranty of Recourse Obligations, dated as of June 28, 2024, by Dean Adler ("***Guarantor***") in favor of Lender (as same may be amended, restated, supplemented or otherwise modified from time to time, the "***Recourse Guaranty***"), and (iv) that certain Guaranty of Completion, dated as of June 28, 2024, by DSA Guarantor, LLC ("***Entity Guarantor***") in favor of Lender (as same may be amended, restated, supplemented or otherwise modified from time to time, the "***Completion Guaranty***"). Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

Lender hereby notifies Borrower that one or more Events of Default have occurred and are continuing under the Loan Agreement and the other Loan Documents (collectively, the "***Existing Events of Default***"), and certain recourse events have occurred that have triggered liability under the Completion Guaranty, as described herein. The Existing Events of Default only represent those Defaults and Events of Default which Lender has identified to date, and Lender may identify, assert and pursue additional Defaults or Events of Default that may now or hereafter exist under the Loan Documents.

1.    **Hotel Conversion Milestone Non-Compliance and Cessation of Construction**. As more particularly described in the Reservation of Rights Letter, Borrower and Entity Guarantor have failed to satisfy the Hotel Conversion Major Milestones required under the Loan Agreement, including, without limitation, (i) receipt of a temporary certificate of occupancy by April 30, 2026 and (ii) Hotel Conversion

2

Substantial Completion by May 31, 2026. In addition, the hotel conversion construction work at the Property has ceased and the Hotel Conversion project is no longer moving forward as originally planned. As a result of the foregoing, an Event of Default has occurred under each of Section 10.1(a)(xxiv) and Section 10.1(a)(xxvii) of the Loan Agreement, and Entity Guarantor has breached its obligations under the Completion Guaranty with respect to the foregoing.

2.      **Failure to Pay Trade Payables**. As more particularly described in the Reservation of Rights Letter, significant accounts payable relating to the Property have accrued and have not been paid current within ninety (90) days of the date invoiced as required by Section 4.2.6(f)(iii) of the Loan Agreement, and such failure constitutes a breach of Section 4.2.6(f) of the Loan Agreement. As a result of the foregoing, an Event of Default has occurred under Section 10.1(a)(xi) of the Loan Agreement.

3.      **Mechanics' Liens**. As more particularly described in the Reservation of Rights Letter, the Property has become subject to several mechanics' liens (and since Lender's delivery of the Reservation of Rights Letter, an additional mechanic's lien), filed by the following Persons: (a) Tantillo Architecture in the amount of $484,508.77, (b) PD Construction Group in the amount of $324,493.60, (c) K Guller LLC in the amount of $93,397.50, (d) Old City Special Services District in the amount of $26,029.06, and (e) Fastrack Builders, Inc. in the amount of $1,166,875.00. None of the foregoing mechanics' liens have been bonded over, discharged or otherwise removed of record as required by the Loan Documents, and the existence of such Liens and the failure to remedy same constitutes a breach of Section 4.2.2 of the Loan Agreement. As a result of the foregoing, an Event of Default has occurred under Section 10.1(a)(viii) of the Loan Agreement, and Entity Guarantor has breached its obligations under the Completion Guaranty with respect to the foregoing.

4.      **Prohibited Transfer / Change of Control**. Lender has become aware of that certain case captioned Keystone Independence Portfolio Member LLC v. L-A Independence Portfolio Holdco LLC et al., Case No. 2026-0320, pending in the Delaware Chancery Court. L-A Independence Portfolio Holdco, LLC ("*LA*") and Dean Adler have purported to remove Keystone Independence Portfolio Member, LLC ("*Keystone*") as managing member of LAK Independence Portfolio JV, LLC (the indirect owner of Borrower) (the "*JV*"), to install LA as a replacement managing member of the JV, to execute an amendment to the operating agreement of the JV reflecting such changes, and to retain PMC Property Group as a managing agent, thereby effecting a Transfer of, and change in Control with respect to, Borrower. These actions constitute a Transfer within the meaning of Section 4.2.1(b)(v) of the Loan Agreement (removal of a managing member of a Person owning a direct or indirect interest in Borrower and addition of a new managing member) and Section 4.2.1(b)(vii) of the Loan Agreement (a change in Control

3

of Borrower) that were undertaken without the prior written consent of Lender and that were not a Permitted Transfer. As a result of the foregoing, the "Ownership and Control Condition" is no longer satisfied, as, among other things, William Glazer no longer directly or indirectly maintains the same level of Control over Borrower and Master Tenant as in effect as of the Closing Date. A non-permitted Transfer, including any failure of the Ownership and Control Condition to be satisfied, constitutes an Event of Default under Section 10.1(a)(xxiii) of the Loan Agreement.

Pursuant to and in accordance with the Loan Agreement and the other Loan Documents, and as a result of the occurrence and continuance of the Existing Events of Default, Lender hereby declares that interest on the Outstanding Principal Balance of the Loan, together with all other Obligations under the Loan Documents, shall accrue and be payable at the Default Rate, effective as of the date of occurrence of each such Event of Default, and shall continue to accrue and be payable at the Default Rate until the Debt is repaid in full. All interest accruing at the Default Rate shall be due and payable on demand and otherwise in accordance with the terms of the Loan Agreement. Borrower shall remain liable for all such interest at the Default Rate from the respective dates of occurrence of each Existing Event of Default, notwithstanding any prior failure by Lender to charge, demand or collect the same.

The declaration of the Existing Events of Default and the imposition of the Default Rate set forth in this notice are without prejudice to, and Lender expressly reserves, all rights, remedies, powers, privileges and recourses available to Lender under the Loan Agreement, the other Loan Documents, the Recourse Guaranty, the Completion Guaranty and any other guaranty or instrument executed in connection with the Loan, at law, in equity or otherwise, all of which are cumulative and may be exercised concurrently, successively or in any order. Without limiting the foregoing, Lender expressly reserves the right (i) to accelerate the Debt and to declare the entire Outstanding Principal Balance of the Loan, together with all accrued and unpaid interest thereon (including interest at the Default Rate) and all other Obligations, immediately due and payable, (ii) to commence foreclosure proceedings and exercise any other remedies under the Mortgage, the Pledge Agreement and any of the other Loan Documents, (iii) to pursue Guarantor under the Recourse Guaranty and Entity Guarantor under the Completion Guaranty (including in respect of the matters described above), and (iv) to identify, assert and pursue any additional Defaults or Events of Default that may now or hereafter exist under the Loan Documents. Each Borrower Party is hereby further advised that Lender's delay, if any, in giving any notice of Default or Event of Default or exercising any rights and/or remedies under the Loan Agreement and/or any of the Loan Documents in respect of the Existing Events of Default and/or taking any other action under the Loan Agreement and/or any of the Loan Documents or otherwise, including, without limitation, the disbursement of any Reserve Funds, and/or the prior failure to charge interest at the

Default Rate and/or demand deposit of any shortfalls into any applicable Account or any other deficiency or other sum required to be deposited pursuant to the Loan Agreement and/or the other Loan Documents, in each case, whether prior to, on or after the date hereof, shall not in any event or at any time constitute (i) a waiver or modification or other amendment of the terms of the Loan Documents or any Borrower Party's payment, performance or any other obligations set forth therein, (ii) any agreement by Lender to disburse any Reserve Funds or apply funds pursuant to Section 6.16 of the Loan Agreement if all conditions to the same set forth in the Loan Documents are not satisfied, (iii) a cure or waiver of any of the Existing Events of Default or any other existing Defaults or Events of Default under the Loan Documents or a forbearance from Lender's exercise of any rights or remedies pursuant to the same (including, without limitation, the right to charge interest at the Default Rate from the date of the occurrence of any applicable Default or Event of Default notwithstanding the fact that the same has not been demanded or collected on any date subsequent to the occurrence of such Default or Event of Default), (iv) a waiver of any rights or remedies that Lender may have under the Loan Documents, at law or in equity, (v) a modification of the Loan Documents or any agreement by Lender to make any modifications to the Loan Documents, (vi) a course of conduct or course of dealing obligating Lender to act in a similar fashion in the future or otherwise suggesting any future behavior by Lender, (vii) a waiver of Lender's right to obligate any Borrower Party to comply with the Loan Documents expressly in accordance with the Loan Documents and/or to exercise any rights under the Loan Documents as a result of any Borrower Party's failure to act as required by the Loan Agreement, (viii) a waiver of Borrower's obligations or Lender's rights with respect to any approval of any budget, (ix) an approval by Lender of any budget (or any amendments to any of the foregoing) submitted by or on behalf of Borrower, or (x) a rescission or modification of any notices given to any Borrower Party or any other obligor, and Lender expressly reserves the right to pursue all such rights and remedies with respect to the Existing Events of Default and any other existing delinquencies, breaches, Defaults or Events of Default, and with respect to any future delinquencies, breaches, Defaults, or Events of Default, as provided in the Loan Documents and applicable law.

This notice may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same instrument. The words "execution," signed," "signature," and words of like import in this notice or in any other certificate, agreement or document related to this notice shall include images of manually executed signatures transmitted by facsimile or other electronic format (including, without limitation, "pdf", "tif" or "jpg") and other electronic signatures (including, without limitation, DocuSign and AdobeSign). The use of electronic signatures and electronic records (including, without limitation, any contract or other record created, generated, sent, communicated, received, or stored by electronic means) shall be of the same legal effect, validity and enforceability as a manually executed

signature or use of a paper-based record-keeping system to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act and any other applicable law, including, without limitation, any state law based on the Uniform Electronic Transactions Act or the Uniform Commercial Code.

This notice shall be governed by and construed in accordance with the laws of the State of New York.

[*Remainder of page intentionally left blank. Signature page follows.*]

Sincerely,

**KREF CAPITAL LLC**, a Delaware
limited liability company

Signed by:

By: _John Gors_
8CD63C871072427...

Name: John Gors
Title: Authorized Signatory

[*End signatures.*]

[Signature to Notice of Event of Default, Imposition of Default Rate Interest and
Notice of Recourse Events ]

Schedule 1

Lubert-Adler, L.P.
2400 Market Street, Suite 301
Philadelphia, Pennsylvania 19203
Attention: Dean Adler and Jessica Morgan
Email: dadler@lubertadler.com and
jmorgan@lubertadler.com

Dean Adler
DSA Guarantor, LLC
2400 Market Street, Suite 301
Philadelphia, Pennsylvania 19203
Email: dadler@lubertadler.com

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, 14th Floor
Philadelphia, Pennsylvania 19103
Attention: Bradley A. Krouse, Esq.
Email: bkrouse@klehr.com